**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERMAINE ANDERSON, individually and as a representative of a class of similarly situated persons, on behalf of the ADVANCE 401(K) PLAN,<br><br>    Plaintiff,<br>  v.<br><br>ADVANCE PUBLICATIONS, INC.<br><br>    Defendant. | Case No: 1:22-cv-06826<br><br><br>**AMENDED CLASS ACTION COMPLAINT** |

## I.  INTRODUCTION

1. Plaintiff Jermaine Anderson ("Plaintiff"), individually in his capacity as a participant of the Advance 401(k) Plan ("Plan"), brings this action ("Action")[1] under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participants and beneficiaries of the Plan, against Defendant, Advance Publications, Inc. ("Advance"), for breach of its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and related breaches of applicable law beginning six years from the date the initial complaint originating this action was filed and continuing to the date of judgment, or such other date the Court determines is appropriate and just ("Class Period").

2. Defined contribution plans (*e.g.*, 401(k) and 401(a) plans) that are qualified as tax-deferred vehicles have become the primary form of retirement saving in the United States and, as a result, America's *de facto* retirement system. Unlike traditional defined benefit

---

[1]This Amended Complaint is submitted pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and in accordance with Rule III.B.(iv) of the Individual Practices in Civil Cases of the Honorable Analisa Torres.

retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or underperformance of pension plan assets used to fund defined benefits, the participants in defined contribution plans bear the risk of high fees and investment underperformance.

3.    The importance of defined contribution plans to the United States retirement system has become pronounced as employer-provided defined benefit plans are increasingly rare as an offered and meaningful employee benefit.

4.    As of December 31, 2020, the Plan had 12,027 participants with account balances and assets totaling approximately $1.50 billion, placing it in the top 0.1% of all defined contribution plans by plan size.[2]  Defined contribution plans with substantial assets, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of defined contribution plans and the investment of defined contribution assets.  The marketplace for defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.    Advance maintains the Plan, and is responsible for selecting, monitoring, and retaining the service providers that provide investment, recordkeeping, and other administrative services.  Advance is a fiduciary under ERISA, and, as such, owes specific duties to the Plan and its participants and beneficiaries, including obligations to act for the exclusive benefit of participants, ensure that the investment options offered through the Plan are prudent and diverse, and ensure that Plan expenses are fair and reasonable in relation the services obtained.

---

[2]The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2018 (pub. July 2021).

6.      Advance has breached its fiduciary duties to the Plan.  As detailed below, Advance selected, retained, and/or otherwise ratified poorly-performing investments instead of offering more prudent alternative investments that were readily available at the time Advance selected and retained the funds at issue and throughout the Class Period and/or otherwise is responsible for the conduct of other Plan fiduciaries, including the Committee and Board (both defined below), that engaged in such breaches of fiduciary duty.  Since Advance has discretion to select the investments made available to participants or is otherwise legally responsible for the same, Defendant's breaches are the direct cause of the losses alleged herein.

7.      To remedy these fiduciary breaches and other violations of ERISA, Plaintiff brings this class action under Sections 404, 409 and 502 of ERISA, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiff seeks such other equitable or remedial relief for the Plan and the proposed class ("Class") as the Court may deem appropriate and just under the circumstances.

8.      Plaintiff specifically seeks the following relief on behalf of the Plan and the Class:

   a.      A declaratory judgment holding that the acts of  Defendant (as defined below) described herein violate ERISA and applicable law;

   b.      A permanent injunction against Defendant (as defined below) prohibiting the practices described herein and affirmatively requiring it to act in the best interests of the Plan and its participants;

   c.      Equitable, legal or remedial relief for all losses and/or compensatory damages;

   d.      Attorneys' fees, costs and other recoverable expenses of litigation; and

e.    Such other and additional legal or equitable relief that the Court deems

appropriate and just under all of the circumstances.

## II.    THE PARTIES

9.    Plaintiff is a former employee of Advance and former participant in the Plan under 29 U.S.C. § 1002(7).  Plaintiff is a resident of Bronx, New York.  During the Class Period, Plaintiff maintained an investment through the Plan in the BlackRock LifePath Index 2035 Fund.

10.    Advance is a private New York corporation headquartered in New York, New York.  Advance invests in a portfolio of companies across media, entertainment, technology, communications, education and other potential growth sectors.  Advance is also among the largest shareholders in Charter Communications, Warner Bros. Discovery and Reddit.

11.    The Board of Trustees of Advance (the "Board") appointed "authorized representatives" of Advance, including the Administrative Committee ("Committee"), as plan fiduciaries.  The individual members of the Board were/are fiduciaries of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002(21)(A) because each exercised discretionary authority to appoint and/or monitor the Committee, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

12.    The Committee and its individual members are responsible for the general administration of the Plan and each are fiduciaries under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Administrative maintains its address at Advance's corporate headquarters in New York, New York.  The Committee and its members are appointed by Advance or its delegate to administer the Plan on Advance's behalf.

13.    Pursuant to the parties' Stipulation dated November 16, 2022, which was approved by the Court by Order dated November 17, 2022 (Dkt. 37), Advance has agreed to be

responsible for satisfying any final judgment based on the actions or omissions of the fiduciaries responsible for overseeing the Plan and/or individuals or entities responsible for appointing and monitoring those fiduciaries, including the Board and the Committee and their members.  For purposes of convenience, Advance, the Board, the Committee and the members of the Committee and the Board between August 10, 2016 and the present shall be referred to herein collectively and individually as "Defendant."

### III.   JURISDICTION AND VENUE

14.   Plaintiff seeks relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

15.   This Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. § 1331 because the Action arises under the laws of the United States.

16.    Venue is proper in this District pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because Advance's principal place of business is in this District and the Plan is administered from this judicial district.  Further, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

17.   Plaintiff has standing to bring the Action because he maintained investments in the Plan in the investment options challenged in the Action during the Class Period.  Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan.  As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendant's fiduciary breaches and remains vulnerable to continuing harm, all redressable by the Court.  In addition, although standing under Section 502(a)(2) of ERISA, 29

U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiff and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

## IV.   FACTUAL ALLEGATIONS

### A.   Background and Plan Structure

18.     The Plan is a participant-directed 401(k) plan, meaning participants direct the investment of their contributions into various investment options offered by the Plan.  Each participant's account is credited with their participant contributions, applicable employer matching contributions, any discretionary contributions, and earnings or losses thereon.  The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.  The investment options made available to Plan participants include various mutual funds, collective trust funds and a self-directed brokerage account.

19.     Mutual funds are publicly traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities.  Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the U.S. Securities and Exchange Commission ("SEC").  Mutual funds are subject to SEC regulation and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

20.     Collective trusts are, in essence, mutual funds without the SEC regulation. Collective trusts fall under the regulatory purview of the Office of the Comptroller of the Currency or individual state banking departments.  Collective trusts were first organized under

state law in 1927. Today, banks create collective trusts only for their trust clients and for employee benefit plans, like the Plan. Modern collective trust sponsors provide sufficient information for investors to make informed decisions about the merits of investing in collective trusts. The main advantage of opting for a collective trust, rather than a mutual fund, is the negotiability of the fees; accordingly, larger retirement plans are often able to and should be able to leverage their size for lower fees through collective trusts.

21.    During the Class Period, Plan assets were held in a trust by the Plan's trustee, Fidelity Management Trust Company. All investments and asset allocations are performed through this trust instrument.

**B.    Target Date Funds**

22.    A target date fund ("TDF") is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches. TDFs offer investors dynamic, straightforward asset allocation, while providing both long-term growth and capital preservation. All TDFs are inherently actively managed, because managers make changes to the allocations to stocks, bonds, and cash over time. These allocation shifts are referred to as a fund's glide path.

23.    TDF glide paths are managed either "to" or "through" retirement. A "to retirement" glide path generally assumes participants will withdraw their funds once they reach the presumed retirement age, or soon thereafter. The asset allocation of a "to retirement" TDF remains static once the retirement date is reached. A "through retirement" glide path expects participants will remain invested after reaching retirement and gradually draw down on their funds. Accordingly, the terminal allocation of a "through" TDF is not reached until a predetermined number of years after the target date.

24.     "To" strategies are managed to protect against the risk of a market decline significantly diminishing assets, while the "through" approach focuses on the risk of outliving savings.  Each strategy treats the other's primary focus as a secondary objective (*i.e.*, most "to" managers "have the objective of limiting portfolio volatility up to retirement as the primary goal, and the income throughout retirement is more of a secondary objective.").[3]  TDFs designed to take investors to retirement typically de-risk faster than their "through" peers, and while this may offer greater potential protection against downside risk, it leaves investors exposed to the potentially destructive, lasting consequences of running out of money in retirement.  As retirees trend toward keeping savings in their retirement plans post-retirement, "through" glide paths have been more widely utilized.[4]  Indeed, of the 28 TDF suites launched in the past decade which remain active, nearly 80% adopt a "through" approach.[5]

25.     The underlying mutual funds that TDF managers choose to populate each asset class can be actively or passively managed.  TDFs comprised of primarily or entirely passive strategies provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift.  TDFs filled with actively managed funds tend to provide more diversified asset class exposure while offering the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform.

**C.      Defendant's Breaches of Fiduciary Duties**

26.     As discussed in detail below, Defendant has severely breached its fiduciary duties of prudence and loyalty to the Plan.  Plaintiff did not acquire actual knowledge regarding

---

[3]Amanda Umpierrez, *Evaluating 'To' vs. 'Through' Glide Paths*, PLANSPONSOR, (Feb. 17, 2021), https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

[4]*Id.*

[5]MORNINGSTAR, 2022 TARGET-DATE STRATEGY LANDSCAPE (2022).

Defendant's breaches at issue here until shortly before the initial complaint originating this action was filed.

### 1. The Plan's Investment in the BlackRock LifePath Index Funds

27. Among other investments, the Plan lineup has, since the adoption of the Plan on April 15, 2011,[6] offered the BlackRock LifePath Index Funds ("BlackRock TDFs"), a suite of ten TDFs.[7] The BlackRock TDFs are significantly worse performing, both in terms of total and risk-adjusted returns, than most of the mutual fund alternatives offered by TDF providers, as well as the broader TDF marketplace, and, throughout the Class Period, could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable. Defendant was responsible for crafting the Plan lineup and could have chosen from a wide range of prudent alternative target date families offered by competing TDF providers, which are readily available in the marketplace, but elected to retain the BlackRock TDFs instead, an imprudent decision that has deprived Plan participants of significant growth in their retirement assets.

28. A simple weighing of the merits and features of all other available TDFs at the beginning of the Class Period would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan. In addition, any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite. Instead, as is currently in vogue, Defendant appears to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return, either on an actual or risk-adjusted

---

[6]Advance 401(k) Plan 2011 Form 5500.

[7]The Plan offered an eleventh BlackRock TDF, the 2020 vintage, for a substantial part of the Class Period. During the Fourth Quarter of 2019, the 2020 Fund was reorganized into the Retirement Fund, and shareholders of the 2020 Fund received shares of the Retirement Fund.

basis.  Had Defendant carried out its responsibilities in a single-minded manner with an eye focused solely on the interests of the participants, it would have come to this conclusion and acted upon it.  However, Defendant failed to act in the sole interest of Plan participants and breached their fiduciary duties by imprudently selecting, retaining, and failing to appropriately monitor the clearly inferior BlackRock TDFs.

29.    Since the fiduciaries here employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence) based upon basic economics and established investment theory, they clearly breached their fiduciary duties under ERISA – which are well-understood to be the "highest known to law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

30.    Exacerbating Defendant's imprudent decisions to add and retain the BlackRock TDFs is the suite's designation as the Plan's Qualified Default Investment Alternative ("QDIA"). Under DOL regulations, retirement plan fiduciaries can designate one of the investment offerings in a plan's lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets.  If participants do not indicate where their assets should be invested, all contributions are automatically invested in the QDIA.  For this reason, it is vital for fiduciaries to understand the relevant plan participant population and ensure the QDIA is a suitable and prudent option.  Indeed, Plan fiduciaries are responsible for the prudent selection and continuous monitoring of an appropriate QDIA.  The BlackRock TDF with the target year closest to a participant's assumed retirement age (*i.e.*, age 65) has served as the QDIA in the Plan throughout the Class Period.

31.     Given that the vast majority of Plan participants are not sophisticated investors, many, by default, concentrate their retirement assets in TDFs.  As such, the impact of Defendant's imprudent selection of TDFs is magnified vis-à-vis other asset categories.  Indeed, by December 31, 2020, approximately 76% of the Plan's assets were invested in the BlackRock TDFs.  Moreover, approximately 76% of Plan participants had their entire account balance invested in the BlackRock TDFs.

### i.     The S&P Target Date Indices

32.     As an evaluative tool, prudent fiduciaries will assess a TDF's risk and return characteristics compared to the TDF industry at large.  The managers of the BlackRock TDFs, like those of many TDF suites, have designed a custom benchmark against which their performance can be assessed.  For each TDF vintage, the BlackRock LifePath Index Custom Benchmark is a weighted mix of several market indices that are representative of the asset classes in which the BlackRock TDFs invest.  As this composite benchmark simply mirrors the overall strategy of the series and fails to demonstrate how the investment is performing relative to peers, it is an imperfect evaluative tool, to put it kindly.  Rather than demonstrate the investment merits of the BlackRock TDFs in relation to the broader TDF market, as, for example, can be achieved (and is commonly performed) by utilizing the S&P 500 Index to benchmark a domestic large cap equity fund, the BlackRock TDF custom benchmark merely reflects the managers' ability to execute their own particular investment strategy.  Indeed, the quarterly reports of the Plan's investment advisor, Towers Watson Investment Services, Inc. ("Towers Watson"), concede that the custom benchmark serves only to track and reflect the TDF's asset allocation shifts over time (without providing any meaningful insight as to the actual performance of the BlackRock TDFs relative to other readily available alternatives), thereby

effectively acknowledging that comparing the BlackRock TDFs to only a custom benchmark is insufficient from a prudent monitoring perspective.[8]

33.     Despite this explicit acknowledgement, Towers Watson only compared the performance of the BlackRock TDFs to its custom benchmark because it inexplicably treated the BlackRock TDFs as just a passively managed investment that need not be measured against a benchmark or similar investments under its internal investment guidelines.  Classifying the BlackRock TDFs, and indeed *any* TDF, as a passively managed investment is, in a word, fatuous.

34.     Whether their underlying portfolios are filled with actively or passively managed underlying funds, it is well accepted and established that all TDFs are inherently actively managed, because managers choose which asset classes to utilize and make changes to the allocations to the various positions in stocks, bonds and cash over time.  There is no such thing as a passively managed target date fund.  While passively managed investments seek to track a certain segment of the market, actively managed funds seek to add value through decision making.  The risk/return profile of *all* TDF series are impacted by the asset allocation decision making of their managers.

35.     Despite only applying its inappropriate standards for the BlackRock TDFs, Towers Watson also specifically acknowledges that accurate performance evaluation necessarily involves comparison of returns of investments to those of both peer groups and relevant benchmarks.  According to Morningstar, the S&P Target Date Indices ("S&P Indices") are the

---

[8] "Part of a fiduciary's responsibility in evaluating investment options is to consider reasonably available alternatives."   Douglass and Hennecken, *Selecting, Evaluating, and Monitoring Investments in DC Plans: A Legal Perspective*, at 4 (https://www.goodwinlaw.com/-/media/files/publications/attorney-articles/2021/04_06-t-rowe-webinar-and-white-paper.pdf)(last accessed on January 27, 2023).

most common benchmark used to approximate the overall performance of the TDF industry. The S&P Indices, which include a separately calculated index for each target date, each "measure[] the performance of sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds."[9]  As a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs, the S&P Indices represent an appropriate, meaningful benchmark comparator for the BlackRock TDFs.  As each distinct TDF suite necessarily takes a different approach to the achieving the same objective (*i.e.*, preparing investors for retirement by a particular date), the S&P Indices provide an amalgamation of the different characteristics of TDF strategies: TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and, to state the obvious, those with different asset allocations, as distinguishable TDF suites have varying mixes of stocks, bonds and cash.  Accordingly, the S&P Target Date Indices are the most widely used TDF benchmark by investment managers and informed retirement plan fiduciaries.

<div style="text-align:center">ii.    The Comparator TDFs</div>

36.    Measured against appropriate, available alternative TDFs pursuant to the frameworks employed by prudent fiduciaries, the BlackRock TDFs are a vastly inferior retirement solution and could not have been justifiably retained in the Plan.  Throughout the Class Period, there were many TDF offerings that consistently and dramatically outperformed the BlackRock TDFs, providing investors with substantially more capital appreciation. Critically, at the time of Defendant's decisions to select and retain the BlackRock TDFs, those alternatives – unlike the BlackRock TDFs – supported a reasonable expectation of return to justify selection and retention in the Plan.  It is apparent, given the continued presence of the

---

[9]S&P Target Date Index Series Methodology (June 2022).

BlackRock TDFs in the Plan's investment menu, that Defendant failed to scrutinize the performance of the BlackRock TDFs against any of the more appropriate alternatives in the TDF marketplace, or consider the BlackRock TDF suite's standing in the broader TDF market, in order to determine whether the expected performance of the BlackRock TDFs could support their continued retention in the Plan. Accordingly, the Plan's investment in the BlackRock TDFs has resulted in participants missing out on millions of dollars in retirement savings growth that could have been achieved through an investment in any of the below alternative TDFs, and indeed many other options.

37.     Prudent fiduciaries evaluate TDF returns against an appropriate index, a broad group of all peer TDFs, and also specific, readily investable alternatives to ensure that participants are benefiting from the current TDF offering. In addition to consideration of broader benchmarks, it is incumbent on plan fiduciaries and a component of the applicable standard of care throughout the Class Period to assess TDFs against readily available prudent alternatives to ensure that participants are best served by the options available to them.

38.     This is particularly important in the context of the TDF market. Investment advisors considering investments for addition to a retirement plan lineup regularly apply initial screens that funds must pass in order to be considered, including requiring that candidate funds have sufficient assets under management ("AUM") such that the plan's assets would not represent a disproportionately large share of the fund's assets. This important consideration is also acknowledged in the Plan's own IPS. The TDF market is particularly top heavy; by the end of 2021 the top six largest TDF series managed approximately three-quarters of all TDF assets. Accordingly, most of the TDF suites available for investment would fail initial asset-level screening criteria when applied to the assets in the Plan. Indeed, by the end of 2016, the Plan's

approximately $600 million in the BlackRock TDFs would represent less than 5% of the assets

under management of only 10 available TDF series, or just 17% of options available in the TDF

universe.  In light of the structure of the TDF marketplace and commonly used minimum AUM

criteria, it would not be relevant to compare the BlackRock TDFs to TDF series with

significantly smaller levels of assets under management because the Plan would not responsibly

invest in them (since its assets would account for too much of the AUM under normal and

accepted investment principles).  Likewise, it is no retort to point to the unsuitability or poor

performance of a TDF that fails this criteria in order to support a thesis that the BlackRock TDFs

were somehow suitable.

39.    The following six TDFs dominate the market:

| Target Date Series | Mutual Fund ($B) | CIT ($B) | Total ($B) | Market Share |
|---|---|---|---|---|
| Vanguard Target Retirement | 660 | 530 | 1,190 | 36.4% |
| T. Rowe Price Retirement | 180 | 170 | 350 | 10.7% |
| BlackRock LifePath Index | 61 | 226 | 287 | 8.8% |
| American Funds Target Date Retirement | 239 | 9 | 248 | 7.6% |
| Fidelity Freedom | 221 | - | 221 | 6.8% |
| Fidelity Freedom Index | 106 | 46 | 152 | 4.6% |

40.    Accordingly, four of the five non-BlackRock suites shown above (the

"Comparator TDFs") represent an ideal group for comparison, as they represent the most likely

alternatives to be selected were the BlackRock TDFs to be replaced.[10]  It bears noting that

---

[10]The other TDF suite in the largest six by market share during the relevant period was the
Fidelity Freedom Funds ("Freedom Funds"), which do not represent an appropriate comparator.
The Freedom Funds would have been an imprudent selection for the Plan for the duration of the
Class Period due to myriad quantitative and qualitative red flags after undergoing a strategy
overhaul in 2014.  As a result of these issues, the Freedom Funds lost considerable assets and
market share after their strategy overhaul in 2014.  Yet even the anemic and imprudent Freedom
Funds outperformed the BlackRock TDFs during the Class Period.  While the Freedom Funds
were not a suitable alternative for the Plan, a fiduciary applying the requisite scrutiny to the
BlackRock TDFs would have been aware of their underperformance compared to the Freedom
Funds, despite the issues plaguing the Freedom Funds.  This is even further confirmation of the
inability of the BlackRock TDFs to provide competitive returns throughout the Class Period.

hundreds of retirement plan fiduciaries select a new TDF suite each year; conducting such a search is simply not possible without measuring TDFs with different styles, strategies, risk profiles and asset allocations (discussed in further detail below) against one another.

41.     Prudent fiduciaries are aware of the major offerings in the asset classes represented in a plan.  This is all the more important as it relates to a plan's QDIA, given the gravitation of plan assets to the QDIA and importance of the QDIA to the overall design of a plan's investment menu.  In fact, Defendant could have sought comparative returns data and other metrics for each of the Comparator TDFs in real-time throughout the Class Period from Fidelity or the Plan's other service providers, or easily obtained it themselves through just a few clicks of a computer mouse.  When evaluated against the Comparator TDFs, both individually and as a group, the actual and risk-adjusted returns of the BlackRock TDFs, at all stages along the glide path from aggressive to conservative, paled in comparison to those of the readily available alternatives.  Accordingly, the analytical frameworks employed by prudent fiduciaries could not have supported a determination that the expected returns of the BlackRock TDFs would justify their retention in the Plan.

42.     Any suggestion that it is inappropriate for fiduciaries to assess an investment suite holding three-quarters of the Plan's assets against specific available alternatives because "to" glide paths, like that of the BlackRock TDFs, adopt a more conservative approach is misleading. While the BlackRock TDFs de-risk at a quicker pace than most of the Comparator TDFs, the resulting equity allocation discrepancy is only reflected in its two most conservative vintages, the 2025 and Retirement TDFs.[11]  Indeed, the BlackRock TDF series has the industry's most

_____

[11]It necessarily follows that the percentage of assets in a TDF vintage which are not allocated to equities are in some combination of fixed income instruments and cash (with the latter appearing

aggressive glide path for investors furthest from retirement and maintains a comparable equity allocation to its peers until an investor is approaching retirement.[12]

| Target Year | Percentage of Portfolio in Equities | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2065 | 2060 | 2055 | 2050 | 2045 | 2040 | 2035 | 2030 | 2025 | 2020 | 2015 | 2010 | 2005 | Retire |
| American Funds Trgt Date Retire | 85 | 85 | 85 | 85 | 84 | 81 | 71 | 59 | 50 | 45 | 42 | 39 | - | - |
| Fidelity Freedom Index | 90 | 90 | 90 | 90 | 90 | 89 | 77 | 62 | 56 | 49 | 40 | 30 | 21 | 19 |
| T. Rowe Price Retirement | 94 | 94 | 94 | 94 | 92 | 88 | 79 | 69 | 58 | 51 | 47 | 44 | 41 | - |
| Vanguard Target Retirement | 87 | 87 | 87 | 87 | 84 | 76 | 69 | 62 | 54 | 42 | 29 | - | - | 29 |
| BlackRock LifePath Index | 97 | 97 | 97 | 96 | 91 | 82 | 72 | 60 | 48 | 40 | - | - | - | - |
| Comparator TDF Average | 89 | 89 | 89 | 89 | 88 | 84 | 74 | 63 | 55 | 47 | | | | |
| BlackRock +/- Average | **8** | **8** | **8** | **7** | **4** | **-2** | **-2** | **-3** | **-7** | **-7** | | | | |

43.     The BlackRock TDFs are considerably more aggressive than the Comparator TDFs from the vintage intended for the youngest investors through those with a target retirement date of 2050.  For the 2045 through 2030 vintages, the latter of which is managed for investors currently within ten years of their anticipated retirement date, the difference in equity allocations between the BlackRock TDFs and the Comparator TDFs is negligible.  Though the BlackRock TDFs become considerably more conservative in the 2025 vintage and at retirement, each of the Comparator TDFs ultimately reach a terminal equity allocation that is at or below the 40% of the BlackRock TDFs.

---

in TDF portfolios primarily as the retirement date approaches).  For example, when the table "Percentage of Portfolio in Equities" notes that the allocation of the BlackRock 2055 TDF is 97% equity, this means that 3% of the portfolio is allocated to a mix of bonds and cash.

[12]Current equity allocations were compiled from Vanguard Advisor's online "Compare Products" tool. Where an equity allocation is blank, the TDF does not offer that respective vintage.  The equity allocation in the BlackRock TDFs' Retirement vintage is shown in the 2020 column.



iii.    Performance Comparisons

44.    The contention that the performance of a "to," ostensibly more conservative, TDF cannot be compared to more aggressive series relies on the presumption that a considerably heavier weight to equities will likely produce greater returns, as compensation for the assumption of greater risk.  The industry-leading equity allocation of the longest-dated vintages of the BlackRock TDFs has refuted this notion consistently and dramatically throughout the Class Period.  The repeatedly inferior returns of the vintages serving young investors are matched by similar performance shortcomings across the BlackRock TDFs' glide path, as reflected in the three- and five-year annualized returns data[13] provided below comparing the performance of the

---

[13]Virtually all competent investment advisors emphasize that fiduciaries should focus on three- and five-year returns to evaluate the performance of an investment over periods most closely approximating a market cycle and persistent poor performance over those periods demands investigation and action by fiduciaries.  Indeed, the IPS explicitly acknowledges that the Committee should review investment performance over a full market cycle of roughly three to

BlackRock TDFs to that of the Comparator TDFs, as well as to the performance of the broader universe of TDFs, as represented by the S&P Indices.[14]

45.     Moreover, analysis of a TDF's risk-adjusted return, in concert with its actual return, can control for any differences in asset allocation among comparators used for evaluation, and is prescribed as an evaluative metric in the IPS.  The Sharpe ratio metric, commonly prescribed as a component of a fiduciary investment monitoring process by retirement plan investment policy statements, accounts for differing levels of risk by measuring the performance of an investment, such as a TDF, compared to the performance of similar investments, after adjusting for risk.  More specifically, the Sharpe ratio represents the additional amount of return that an investor receives per unit increase of risk.  The Sharpe ratio is computed by comparing a fund manager's outperformance of the risk-free rate to the standard deviation of the manager's performance.  Applied to TDFs, this metric enables the comparison of suites with disparate equity and fixed income allocations as well as both "to" and "through" management styles (each resulting in varying levels of risk) by controlling for those differences.  In comparing two TDFs,

---

five years.  Any suggestion that a TDF has a lifespan of 10 or 25 years and, therefore, performance metrics of three to five years should not be considered is nonsensical because (a) at any point in time, many vintages of TDFs have shorter lifespans than 10, and especially 25, years, and (b) most importantly, in light of employment mobility in the United States (with the average employee holding a position for slightly more than four years), competent and informed fiduciaries understand that many participants will not maintain their TDF investments within a defined contribution plan such as the Plan until the actual target date of the given investment. Thus, three- and five-year performance is paramount in the minds of any competent fiduciary of a retirement plan.

[14]The only exception is the BlackRock Retirement TDF, which has regularly generated better trailing returns than the two Comparator TDFs that also offer a Retirement vintage (Fidelity Freedom Index and Vanguard Target Retirement).  But the outperformance of a single vintage does not exonerate the rest of the suite's putrid performance.  Indeed, TDFs are evaluated and selected as a single suite.  Moreover, as the BlackRock TDFs are a "to retirement" investment, they are managed with the expectation that investors will withdraw their assets from the Plan upon reaching the Retirement vintage or shortly thereafter.

the Sharpe ratio enables plan fiduciaries to determine whether Manager A, which has assumed

greater risks than manager B, is appropriately compensating investors in the form of relatively

superior returns.[15]  In other words, the Sharpe ratios can teach investors and responsible

fiduciaries whether the investment they are considering is worth it compared to other readily

available investments.

46.      The below performance data, including the three- and five-year annualized and

risk-adjusted returns, represents information that was easily accessible to Advance during the

Class Period and would have been reviewed by prudent fiduciaries.  Defendant could have

sought this comparative returns data at any time from Fidelity in its capacity as recordkeeper

(since Fidelity regularly provides such data to their customers), as well as from the Plan's other

service providers, or, in the alternative, obtained it themselves in real time through just a few

clicks of a computer mouse.  At any point in the Class Period, such data (in addition to further

quantitative factors, such as information ratio and batting average) would have been sufficient to

convince a fiduciary following a prudent process to investigate alternatives and ultimately

replace the BlackRock TDFs.

- By the metrics available to Defendant at the start of the Class Period, as of the most recent quarter-end, the three- and five-year annualized returns of the 2045 through 2055[16] BlackRock TDFs, each of which possessed a considerably greater equity allocation than the average of the Comparator TDFs, trailed those of the Comparator TDFs (and the corresponding S&P Indices) and had consistently done so for many consecutive quarters.  The entire suite, bar the Retirement vintage, ranked in the bottom half among the Comparator TDFs in both actual and risk-

---

[15]Consider the following example: Manager A generates a return of 15% and Manager B generates a return of 12%; the risk-free rate is 5%.  Manager A's portfolio has a standard deviation of 8% while Manager B's portfolio has a standard deviation of 5%.  In this example, Manager A's Sharpe ratio is 1.25; Manager B's is 1.4.  Though Manager A generated higher actual returns, their assumption of greater risk rendered their risk-adjusted returns inferior to those of Manager B.
[16]The BlackRock 2060 TDF did not have a three-year track record until the Fourth Quarter of 2017.  The BlackRock 2065 TDF did not launch until September 2019.

adjusted returns. Moreover, every single vintage failed to beat the broad TDF market, as represented by the corresponding vintage of the S&P Indices. As a further indication of the BlackRock TDFs' performance issues, the suite's three- and five-year Plan-asset weighted Sharpe ratios each ranked in the 60th percentile among its peer group (as defined by Morningstar). As of the end of the Second Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below shortcomings.

| 3-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BlackRock TDF | 5.52 | 5.80 | 6.06 | 6.22 | 6.39 | 6.59 | 6.80 | 7.00 | |
| Outperformance vs S&P TDF Index | (1.21) | (1.21) | (1.31) | (1.37) | (1.38) | (1.27) | (1.24) | (1.13) | |
| Best Performing Comparator TDF | 7.57 | 8.29 | 8.62 | 8.59 | 8.61 | 8.63 | 8.65 | 8.61 | |
| Worst Performing Comparator TDF | 5.54 | 6.26 | 6.42 | 6.71 | 6.75 | 6.82 | 6.89 | 6.98 | |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | 4 | [17] |

| 5-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BlackRock TDF | 5.39 | 5.69 | 5.96 | 6.17 | 6.34 | 6.52 | 6.70 | 6.97 |
| Outperformance vs S&P TDF Index | (0.70) | (0.71) | (0.76) | (0.80) | (0.81) | (0.77) | (0.74) | (0.62) |
| Best Performing Comparator TDF | 7.64 | 8.45 | 8.75 | 8.69 | 8.73 | 8.73 | 8.74 | 8.74 |
| Worst Performing Comparator TDF | 5.08 | 5.75 | 5.88 | 6.18 | 6.23 | 6.29 | 6.28 | 6.41 |
| BlackRock Rank (out of 5) | 4 | Last | 4 | Last | 4 | 4 | 4 | 4 |

| Sharpe Ratio as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 4 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 3 | 4 | 4 | 4 | Last | 4 | 4 |

- As of the end of the Third Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 62nd and 70th percentile, respectively, among its peer group.

---

[17]For avoidance of confusion, the figures in the "Outperformance vs S&P TDF Index" row represent the BlackRock TDF's out- or underperformance of the corresponding vintage of the S&P Indices. A red number indicates the annualized amount by which the BlackRock TDF underperformed its S&P counterpart.

-21-

| 3-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.07 | 5.33 | 5.56 | 5.74 | 5.91 | 6.08 | 6.20 | 6.30 |
| Outperformance vs S&P TDF Index | (0.68) | (0.68) | (0.74) | (0.85) | (0.86) | (0.79) | (0.74) | (0.63) |
| Best Performing Comparator TDF | 6.67 | 7.11 | 7.55 | 7.67 | 7.70 | 7.75 | 7.77 | 7.75 |
| Worst Performing Comparator TDF | 5.26 | 5.81 | 6.12 | 6.35 | 6.36 | 6.39 | 6.42 | 6.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.72 | 8.54 | 9.24 | 9.87 | 10.44 | 10.95 | 11.44 | 11.86 |
| Outperformance vs S&P TDF Index | (1.33) | (1.29) | (1.33) | (1.26) | (1.11) | (0.92) | (0.70) | (0.47) |
| Best Performing Comparator TDF | 10.65 | 12.01 | 12.76 | 12.91 | 13.07 | 13.11 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 7.65 | 8.81 | 9.25 | 10.13 | 10.22 | 10.36 | 10.53 | 10.73 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | 4 | 4 | 4 | 4 |

| Sharpe Ratio as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 4 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

- As of the end of the Fourth Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 53rd and 74th percentile, respectively, among its peer group.

| 3-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.68 | 3.88 | 4.05 | 4.19 | 4.30 | 4.38 | 4.41 | 4.41 |
| Outperformance vs S&P TDF Index | (0.50) | (0.44) | (0.44) | (0.47) | (0.46) | (0.45) | (0.50) | (0.51) |
| Best Performing Comparator TDF | 4.61 | 4.67 | 5.03 | 5.15 | 5.19 | 5.28 | 5.28 | 5.26 |
| Worst Performing Comparator TDF | 3.96 | 4.23 | 4.52 | 4.56 | 4.61 | 4.62 | 4.65 | 4.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.45 | 7.19 | 7.84 | 8.45 | 8.94 | 9.42 | 9.82 | 10.16 |
| Outperformance vs S&P TDF Index | (1.22) | (1.19) | (1.20) | (1.15) | (1.06) | (0.89) | (0.78) | (0.66) |
| Best Performing Comparator TDF | 8.96 | 10.40 | 11.14 | 11.31 | 11.46 | 11.51 | 11.52 | 11.50 |
| Worst Performing Comparator TDF | 6.55 | 7.59 | 8.12 | 8.94 | 9.02 | 9.16 | 9.26 | 9.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| Sharpe Ratio as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 3 | 3 | 4 | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | 4 | 4 | Last | 4 | 4 |

- As of the end of the First Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 68th and 75th percentile, respectively, among its peer group.

| 3-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.09 | 4.48 | 4.83 | 5.14 | 5.40 | 5.56 | 5.62 | 5.62 |
| Outperformance vs S&P TDF Index | (0.80) | (0.68) | (0.63) | (0.61) | (0.54) | (0.53) | (0.63) | (0.71) |
| Best Performing Comparator TDF | 5.37 | 5.72 | 6.38 | 6.73 | 6.84 | 6.99 | 7.01 | 7.00 |
| Worst Performing Comparator TDF | 4.78 | 5.14 | 5.72 | 5.95 | 6.14 | 6.17 | 6.20 | 6.17 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.76 | 6.42 | 7.01 | 7.56 | 8.01 | 8.40 | 8.68 | 8.92 |
| Outperformance vs S&P TDF Index | (1.06) | (1.00) | (0.98) | (0.94) | (0.85) | (0.75) | (0.77) | (0.79) |
| Best Performing Comparator TDF | 8.21 | 9.36 | 10.13 | 10.43 | 10.59 | 10.67 | 10.69 | 10.66 |
| Worst Performing Comparator TDF | 6.04 | 6.91 | 7.56 | 8.27 | 8.33 | 8.42 | 8.46 | 8.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | 4 | Last | Last | Last | Last |

47.    At this point, consistent with their regular monitoring duties and the Plan's own IPS, Defendant should have reviewed at least four consecutive quarters of deplorable actual and risk-adjusted three- and five-year returns by the BlackRock TDFs when measured against appropriate peer funds, the most widely utilized TDF benchmark, and the broader TDF industry. These strong indicators of the imprudence of the continued retention of the BlackRock TDFs should have been sufficient to convince Defendant to investigate a replacement, consistent with the guidance in the IPS that persistent material underperformance against a benchmark or peer group was sufficient cause for further scrutiny of a fund's continued appropriateness for the

Plan.[18]  Either trend of underperformance alone, whether on an actual or risk-adjusted basis, should have raised alarm bells for prudent fiduciaries, as was prescribed in the IPS.  That both red flags were present here, but were ignored, demonstrates that Defendant was either asleep at the wheel or willfully ignored widely utilized investment evaluation metrics in their continued review of the suitability of the BlackRock TDFs for the Plan.  Defendant allowed the suite to linger even as its performance issues persisted:

- As of the end of the Second Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 71st and 76th percentile, respectively, among its peer group.

| 3-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.67 | 4.08 | 4.45 | 4.79 | 5.07 | 5.23 | 5.25 | 5.19 |
| Outperformance vs S&P TDF Index | (0.91) | (0.78) | (0.71) | (0.68) | (0.59) | (0.58) | (0.71) | (0.84) |
| Best Performing Comparator TDF | 5.10 | 5.57 | 6.08 | 6.57 | 6.69 | 6.85 | 6.87 | 6.86 |
| Worst Performing Comparator TDF | 4.41 | 4.73 | 5.35 | 5.66 | 5.83 | 5.82 | 5.85 | 5.80 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.51 | 7.34 | 8.08 | 8.76 | 9.36 | 9.87 | 10.24 | 10.54 |
| Outperformance vs S&P TDF Index | (1.40) | (1.33) | (1.33) | (1.27) | (1.12) | (0.96) | (0.92) | (0.87) |
| Best Performing Comparator TDF | 9.27 | 10.47 | 11.42 | 11.85 | 12.07 | 12.16 | 12.16 | 12.16 |
| Worst Performing Comparator TDF | 6.96 | 8.01 | 8.77 | 9.73 | 9.82 | 9.93 | 10.01 | 10.19 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | Last | Last | Last | Last | Last |

---

[18]Four quarters of trailing three- or five-year returns is distinct from four quarters of returns. Plaintiffs note, for example, four consecutive quarters of trailing five-year underperformance to show that, were the Committee meeting on a regular, quarterly basis, it would have reviewed five-year underperformance at four straight separate meetings.  Any trailing three- or five-year underperformance as of a single quarter end is worth a fiduciary's attention; trends such as those detailed in this Complaint are cause for considerable concern.

- As of the end of the Third Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 68th and 74th percentile, respectively, among its peer group.

| 3-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.14 | 5.77 | 6.34 | 6.85 | 7.30 | 7.57 | 7.67 | 7.68 |
| Outperformance vs S&P TDF Index | (0.90) | (0.79) | (0.74) | (0.72) | (0.60) | (0.57) | (0.68) | (0.78) |
| Best Performing Comparator TDF | 6.83 | 7.46 | 8.03 | 8.61 | 8.85 | 9.01 | 9.05 | 9.05 |
| Worst Performing Comparator TDF | 5.92 | 6.38 | 7.19 | 7.61 | 7.97 | 8.02 | 8.06 | 8.02 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.18 | 7.02 | 7.78 | 8.47 | 9.05 | 9.55 | 9.87 | 10.11 |
| Outperformance vs S&P TDF Index | (1.46) | (1.40) | (1.39) | (1.35) | (1.23) | (1.08) | (1.09) | (1.07) |
| Best Performing Comparator TDF | 8.81 | 10.10 | 11.12 | 11.65 | 11.90 | 12.00 | 12.04 | 12.02 |
| Worst Performing Comparator TDF | 6.71 | 7.67 | 8.54 | 9.47 | 9.56 | 9.65 | 9.70 | 9.85 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

| Sharpe Ratio as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | 4 | 4 | Last | Last | Last | Last | Last |

- As of the end of the Fourth Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 59th and 72nd percentile, respectively, among its peer group.

| 3-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.66 | 6.48 | 7.21 | 7.89 | 8.48 | 8.85 | 8.97 | 8.96 | 8.96 |
| Outperformance vs S&P TDF Index | (0.82) | (0.72) | (0.66) | (0.62) | (0.47) | (0.39) | (0.52) | (0.66) | (0.74) |
| Best Performing Comparator TDF | 7.41 | 8.11 | 8.75 | 9.56 | 9.89 | 10.09 | 10.16 | 10.15 | 9.68 |
| Worst Performing Comparator TDF | 6.55 | 7.07 | 7.85 | 8.39 | 8.91 | 9.14 | 9.16 | 9.11 | 9.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | 4 |

| 5-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.58 | 7.51 | 8.32 | 9.09 | 9.75 | 10.28 | 10.61 | 10.82 | |
| Outperformance vs S&P TDF Index | (1.34) | (1.25) | (1.25) | (1.20) | (1.04) | (0.87) | (0.87) | (0.88) | |
| Best Performing Comparator TDF | 9.09 | 10.36 | 11.50 | 12.13 | 12.45 | 12.57 | 12.62 | 12.60 | |
| Worst Performing Comparator TDF | 7.30 | 8.29 | 9.30 | 10.36 | 10.46 | 10.54 | 10.60 | 10.74 | |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 | |

| Sharpe Ratio as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 3 | 4 | 4 | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | 4 | Last | Last | Last | Last | Last | N/A |

- As of the end of the First Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 68th and 73rd percentile, respectively, among its peer group.

| 3-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.37 | 6.03 | 6.65 | 7.17 | 7.49 | 7.60 | 7.59 | 7.59 |
| Outperformance vs S&P TDF Index | (0.70) | (0.64) | (0.59) | (0.56) | (0.44) | (0.39) | (0.51) | (0.65) | (0.73) |
| Best Performing Comparator TDF | 6.50 | 7.12 | 7.86 | 8.86 | 9.20 | 9.41 | 9.53 | 9.51 | 9.49 |
| Worst Performing Comparator TDF | 5.62 | 6.06 | 6.83 | 7.35 | 7.86 | 8.10 | 8.11 | 8.05 | 8.06 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | |
|---|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.51 | 6.30 | 6.99 | 7.63 | 8.18 | 8.62 | 8.84 | 8.98 | |
| Outperformance vs S&P TDF Index | (1.12) | (1.04) | (1.03) | (1.01) | (0.89) | (0.76) | (0.83) | (0.88) | |
| Best Performing Comparator TDF | 7.92 | 8.83 | 9.94 | 10.63 | 10.93 | 11.07 | 11.12 | 11.12 | |
| Worst Performing Comparator TDF | 6.31 | 7.12 | 8.07 | 8.97 | 9.04 | 9.09 | 9.14 | 9.21 | |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | |

| Sharpe Ratio as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

48.    At this point, consistent with their regular monitoring duties, Advance should have reviewed at least eight consecutive quarters demonstrating the BlackRock TDFs' persistent inability to beat the actual or risk-adjusted three- and five-year returns generated by the

Comparator TDFs, the S&P Indices, and the broader TDF industry.  That is, from the start of the Class Period, the BlackRock TDFs had failed to generate returns to beat the Comparator TDFs or the S&P Indices for *eight consecutive* three-year periods and *eight consecutive* five-year periods, while simultaneously failing to outperform the same comparators adjusting for the levels of risk assumed and demonstrating an inability to produce risk-adjusted returns among the top half of all TDFs.  Defendant's confounding refusal to replace the suite by this juncture represented a severe breach of fiduciary duty.  These issues endured:

- As of the end of the Second Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices.  In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 55th and 65th percentile, respectively, among its peer group.

| 3-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.10 | 5.89 | 6.60 | 7.26 | 7.83 | 8.19 | 8.32 | 8.30 | 8.31 |
| Outperformance vs S&P TDF Index | (0.80) | (0.70) | (0.63) | (0.57) | (0.43) | (0.32) | (0.43) | (0.56) | (0.66) |
| Best Performing Comparator TDF | 6.64 | 7.27 | 8.16 | 9.19 | 9.56 | 9.76 | 9.88 | 9.90 | 9.89 |
| Worst Performing Comparator TDF | 6.04 | 6.49 | 7.19 | 7.66 | 8.14 | 8.40 | 8.40 | 8.37 | 8.37 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.99 | 6.77 | 7.47 | 8.10 | 8.66 | 9.07 | 9.28 | 9.40 |
| Outperformance vs S&P TDF Index | (0.93) | (0.83) | (0.79) | (0.78) | (0.64) | (0.53) | (0.61) | (0.66) |
| Best Performing Comparator TDF | 8.06 | 8.89 | 9.86 | 10.61 | 10.91 | 11.06 | 11.15 | 11.12 |
| Worst Performing Comparator TDF | 6.79 | 7.58 | 8.54 | 9.31 | 9.49 | 9.53 | 9.58 | 9.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Third Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P

Indices.  In addition, the suite's three- and five-year Plan-asset weighted Sharpe ratios ranked in the 52nd and 69th percentile, respectively, among its peer group.

| 3-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.27 | 8.60 | 9.80 | 10.95 | 11.94 | 12.55 | 12.74 | 12.72 | 12.70 |
| Outperformance vs S&P TDF Index | (1.09) | (0.85) | (0.67) | (0.49) | (0.16) | 0.01 | (0.19) | (0.40) | (0.64) |
| Best Performing Comparator TDF | 9.61 | 10.59 | 11.56 | 13.05 | 13.45 | 13.76 | 13.91 | 13.91 | 13.87 |
| Worst Performing Comparator TDF | 8.40 | 9.70 | 10.66 | 11.61 | 12.54 | 12.91 | 12.90 | 12.89 | 12.89 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.58 | 6.34 | 7.02 | 7.64 | 8.20 | 8.59 | 8.75 | 8.81 |
| Outperformance vs S&P TDF Index | (0.91) | (0.79) | (0.76) | (0.75) | (0.59) | (0.46) | (0.55) | (0.61) |
| Best Performing Comparator TDF | 7.32 | 8.01 | 8.98 | 9.79 | 10.08 | 10.26 | 10.35 | 10.32 |
| Worst Performing Comparator TDF | 6.55 | 7.24 | 8.13 | 8.69 | 9.17 | 9.26 | 9.28 | 9.30 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Fourth Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 52nd percentile among its peer group.

| 3-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.71 | 5.23 | 5.70 | 6.14 | 6.51 | 6.69 | 6.72 | 6.70 | 6.69 |
| Outperformance vs S&P TDF Index | (0.33) | (0.24) | (0.08) | 0.06 | 0.18 | 0.18 | 0.04 | (0.12) | (0.26) |
| Best Performing Comparator TDF | 5.72 | 6.12 | 6.92 | 7.43 | 7.62 | 7.77 | 7.83 | 7.81 | 7.81 |
| Worst Performing Comparator TDF | 5.32 | 5.73 | 6.07 | 6.41 | 6.75 | 6.78 | 6.77 | 6.77 | 6.75 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.70 | 4.00 | 4.27 | 4.51 | 4.70 | 4.80 | 4.82 | 4.81 |
| Outperformance vs S&P TDF Index | (0.40) | (0.32) | (0.24) | (0.18) | (0.12) | (0.11) | (0.19) | (0.26) |
| Best Performing Comparator TDF | 4.69 | 5.00 | 5.63 | 5.95 | 6.05 | 6.17 | 6.19 | 6.17 |
| Worst Performing Comparator TDF | 4.24 | 4.50 | 4.82 | 4.99 | 5.10 | 5.13 | 5.12 | 5.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the First Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 56th percentile among its peer group.

| 3-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.36 | 7.38 | 8.28 | 9.14 | 9.89 | 10.34 | 10.48 | 10.47 | 10.45 |
| Outperformance vs S&P TDF Index | (0.61) | (0.37) | (0.16) | 0.04 | 0.33 | 0.48 | 0.36 | 0.18 | (0.03) |
| Best Performing Comparator TDF | 8.24 | 9.05 | 9.79 | 10.88 | 11.28 | 11.50 | 11.62 | 11.62 | 11.58 |
| Worst Performing Comparator TDF | 7.12 | 8.18 | 8.87 | 9.52 | 10.20 | 10.43 | 10.43 | 10.43 | 10.42 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.70 | 5.26 | 5.75 | 6.19 | 6.57 | 6.80 | 6.89 | 6.88 |
| Outperformance vs S&P TDF Index | (0.57) | (0.40) | (0.31) | (0.22) | (0.09) | (0.00) | (0.07) | (0.14) |
| Best Performing Comparator TDF | 5.93 | 6.41 | 7.12 | 7.77 | 7.98 | 8.12 | 8.19 | 8.18 |
| Worst Performing Comparator TDF | 5.54 | 5.92 | 6.39 | 6.69 | 6.96 | 7.08 | 7.08 | 7.05 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Second Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 58th percentile among its peer group.

| 3-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.65 | 7.69 | 8.61 | 9.48 | 10.24 | 10.68 | 10.82 | 10.81 | 10.80 |
| Outperformance vs S&P TDF Index | (0.63) | (0.40) | (0.22) | (0.02) | 0.23 | 0.36 | 0.21 | 0.01 | (0.21) |
| Best Performing Comparator TDF | 8.75 | 9.67 | 10.51 | 11.37 | 11.69 | 11.83 | 11.95 | 11.92 | 11.90 |
| Worst Performing Comparator TDF | 7.27 | 8.39 | 9.39 | 10.09 | 10.79 | 11.05 | 11.03 | 11.04 | 11.03 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.14 | 5.58 | 5.99 | 6.33 | 6.52 | 6.57 | 6.53 |
| Outperformance vs S&P TDF Index | (0.52) | (0.39) | (0.31) | (0.25) | (0.14) | (0.08) | (0.16) | (0.26) |
| Best Performing Comparator TDF | 5.79 | 6.26 | 6.90 | 7.54 | 7.74 | 7.90 | 7.97 | 7.94 |
| Worst Performing Comparator TDF | 5.48 | 5.82 | 6.22 | 6.48 | 6.72 | 6.86 | 6.85 | 6.82 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | N/A |

- As of the end of the Third Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed a continuation of the trend identified above, as the BlackRock TDFs continued to exhibit severe actual and risk-adjusted performance issues compared to both the Comparator TDFs and the S&P Indices. In addition, the suite's five-year Plan-asset weighted Sharpe ratio ranked in the 51st percentile among its peer group

| 3-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.25 | 7.05 | 7.74 | 8.40 | 8.96 | 9.28 | 9.37 | 9.37 | 9.35 |
| Outperformance vs S&P TDF Index | (0.47) | (0.31) | (0.19) | (0.06) | 0.13 | 0.21 | 0.08 | (0.06) | (0.26) |
| Best Performing Comparator TDF | 7.59 | 8.28 | 9.22 | 10.04 | 10.04 | 10.12 | 10.21 | 10.19 | 10.16 |
| Worst Performing Comparator TDF | 6.66 | 7.52 | 8.29 | 8.78 | 9.28 | 9.41 | 9.42 | 9.41 | 9.41 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.22 | 5.73 | 6.16 | 6.56 | 6.90 | 7.09 | 7.15 | 7.15 |
| Outperformance vs S&P TDF Index | (0.47) | (0.37) | (0.31) | (0.26) | (0.17) | (0.12) | (0.19) | (0.26) |
| Best Performing Comparator TDF | 6.27 | 6.74 | 7.16 | 7.75 | 7.95 | 8.09 | 8.14 | 8.13 |
| Worst Performing Comparator TDF | 5.80 | 6.33 | 6.67 | 6.92 | 7.15 | 7.23 | 7.24 | 7.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| Sharpe Ratio as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock 3-Year Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last | Last |
| BlackRock 5-Year Rank (out of 5) | 3 | 4 | Last | Last | Last | Last | Last | Last | N/A |

49.    By this point, consistent with their regular monitoring duties, beginning with the start of the Class Period, Defendant should have reviewed at least *three and a half years'* worth of concerning datapoints laying bare the inability of the BlackRock TDFs to generate returns that beat *any* of the comparators discussed in this complaint.  Defendant's continued refusal to act in response to these blatant warning signs, in defiance of the instruction from the fiduciary training provided to Committee members that fiduciaries must apply additional scrutiny in their ongoing assessment of the QDIA, represented a bewildering miscarriage of its fiduciary duties.

50.    Although the BlackRock TDFs' risk-adjusted returns exhibited some modest improvements in subsequent quarters, those modest improvements were immaterial in nature and did not negate or diminish the profound breaches of fiduciary duty committed by Defendant in retaining the suite in the face of overwhelming and consistent evidence that it could not provide superior returns (and was costing Plan participants tens of millions of dollars in potential appreciation), on an absolute or risk-adjusted basis, than the Comparator TDFs, the S&P Indices, or the broader TDF market.  Moreover, the BlackRock TDFs continued to dramatically, repeatedly underperform the average return of the Comparator TDFs for virtually the entire relevant period, as demonstrated in the charts below comparing the three- and five-year annualized returns of several representative vintages of the BlackRock TDFs to those of the same iterations of the Comparator TDFs, namely the 2025, 2040, and 2055 TDFs, which are the second-shortest dated (2025) and second-longest dated (2055) BlackRock TDFs, as well as the fund that represents the midpoint of the nine vintages for which there were at least three-year trailing returns (2040).  These three vintages represent conservative, moderate and aggressive stages along the BlackRock TDF glidepath and are representative of the shortcomings of the entire suite.





51.     These returns, and all returns cited in this Complaint, are annualized, meaning the differences in the returns between the BlackRock TDFs and Comparator TDFs are equivalent to the specified difference in *each* of the three or five years in the period *compounded*.  This is not the same as saying the funds underperformed by the specified amount over the entire time period.  These are persistent and substantial shortcomings that could not have supported a determination by prudent fiduciaries that the BlackRock TDFs could be justifiably retained in the Plan, particularly not fiduciaries instructed to consider those very deficiencies by the IPS.

Indeed, from the start of the Class Period through the filing of the complaint initiating this action, the BlackRock TDFs *cumulatively* underperformed each of the comparator TDFs (on a Plan-asset weighted basis) by the below amounts which, applied to the considerable amount of Plan assets in the suite, resulted in the loss of over $60 million in missed capital appreciation for the retirement savings of Plan participants:

| BlackRock Cumulative Underperformance vs American Funds | 12.10% |
|---|---|
| BlackRock Cumulative Underperformance vs Freedom Index Funds | 5.15% |
| BlackRock Cumulative Underperformance vs T. Rowe Price | 9.27% |
| BlackRock Cumulative Underperformance vs Vanguard | 2.90% |

52.    Again, the above information was readily obtainable and computable by Defendant in real time throughout the relevant period.  Defendant, however, neglected to undertake any analysis of the BlackRock TDFs against appropriate peers using the above or other important performance metrics prescribed by the IPS.  The consistent application of the guidelines in an IPS is a vital component of an investment selection and monitoring process and, when employed properly, ensures that investment funds are assessed in a replicable manner.  If Defendant had taken its fiduciary duties seriously during the Class Period, it would have replaced the BlackRock TDFs with a suitable alternative TDF.  Its failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

53.    The consistently deplorable performance of the BlackRock TDFs was also visible at the suite level throughout the pertinent period.  The below charts demonstrate the rolling out- or underperformance of the BlackRock TDFs versus each of the Comparator TDFs, weighting the returns of each distinct vintage equally to produce an aggregate suite-level return, another form of TDF analysis regularly undertaken by all investment advisors and competent fiduciaries.

-34-

BlackRock Rolling Returns vs American Funds





-35-

BlackRock Rolling Returns vs Fidelity Freedom Index





<u>BlackRock Rolling Returns vs T. Rowe Price</u>





BlackRock Rolling Returns vs Vanguard





54.    The returns of each vintage of a TDF suite, however, are not experienced by a

Plan in equal measure, as Plan assets are distributed in different quantities across the glide path

depending on a multitude of Plan specific factors.  Accordingly, prudent fiduciaries will perform

the same analysis as set forth above to compare aggregate suite-level returns that are asset-weighted.[19]

BlackRock Rolling Returns vs American Funds





---

[19]Returns are weighted according to the asset levels invested in each vintage of the BlackRock TDFs at the start of the Class Period. For example, if the Plan had $100 million in total assets in the BlackRock TDFs, $10 million of which was invested in the 2030 vintage, the returns of the 2030 vintage would be given a 10% weight in the performance composite.

BlackRock Rolling Returns vs Fidelity Freedom Index





BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





55.    Defendant had immediate access to historical and then-current returns data for the

BlackRock TDFs, and could have sought comparative data from Fidelity and/or the Plan's other

service providers, or obtained it itself in real time through just a few clicks of a computer mouse.

56.    The troubling pattern identified above, which persisted for the entire Class Period,

was ignored by Defendant, who neglected to appropriately scrutinize the BlackRock TDFs

against any of the many superior TDFs available in the market, or the broader TDF market, as a whole.  In fact, notwithstanding the warning signs detailed above, the minutes of meetings of the Administrative Committee reflect that the Committee regularly went multiple quarters without so much as discussing the performance woes and other issues with the BlackRock TDFs.

57.    Had Defendant had taken its fiduciary duties seriously during the Class Period and acted consistent with the guidance of its IPS and the minimum fiduciary standards of care, it would have, upon observing the underperformance of the BlackRock TDFs relative to their applicable S&P Indices, the TDF universe, and specific readily investable peers, replaced the BlackRock TDFs with a suitable alternative TDF suite.  Defendant's failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

## V.    ERISA'S FIDUCIARY STANDARDS

58.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendant as a fiduciary of the Plan.  Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)    for the exclusive purpose of
>
>> (i)    providing benefits to participants and their beneficiaries; and
>>
>> (ii)    defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

59.     Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying reasonable expenses of administering the plan.

60.     Under ERISA, parties that exercise any authority or control over plan assets, including the selection of plan investments and service providers, are fiduciaries and must act prudently and solely in the interest of participants in a plan.

61.     ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n. 8 (2d Cir. 1982).

62.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  Section 405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)     if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

-43-

63.    Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409, 29 U.S.C. § 1109.  Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## VI.    CLASS ALLEGATIONS

64.    This action is brought as a class action by Plaintiff on behalf of himself and the following proposed Class:

> All participants and beneficiaries in the Advance 401(k) Plan at any time on or after August 10, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendant and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

65.    This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66.    **Numerosity**.  Plaintiff is informed and believes that there are at least thousands of Class members throughout the United States.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

67.    **Commonality**.  There are numerous questions of fact and/or law that are common to Plaintiff and all the members of the Class, including, but not limited to the following:

-44-

(a)      Whether Defendant failed and continues to fail to discharge its duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

(b)      Whether Defendant breached its fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and

(c)      Whether and what form of relief should be afforded to Plaintiff and the Class.

68.      **Typicality**.  Plaintiff, who is a member of the Class, has claims that are typical of all the members of the Class.  Plaintiff's claims and all the Class members' claims arise out of the same uniform course of conduct by Defendant and arise under the same legal theories that are applicable as to all other members of the Class.  In addition, Plaintiff seeks relief for the Plan under the same remedial theories that are applicable as to all other members of the Class.

69.      **Adequacy of Representation**.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with other members of the Class or interests that are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

70.      **Potential Risks and Effects of Separate Actions**.  The prosecution of separate actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

71.     **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.  Indeed, virtually the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

72.     **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority of, if not all, Class members are unaware of Defendant's breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendant, the claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

73.     **Manageability**.  This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

74.     Defendant has acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above.  Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

75.     Plaintiff's counsel will fairly and adequately represent the interests of the Class

and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of

Civil Procedure.  Moreover, treating this case as a class action is superior to proceeding on an

individual basis and there will be no difficulty in managing this case as a class action.

76.     Therefore, this action should be certified as a class action under Rules 23(a) and

23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

<div align="center">

**<u>COUNT I</u>**
**(For Breach of Fiduciary Duty)**

</div>

77.     Plaintiff incorporates by reference the allegations in the previous paragraphs of

this Complaint as if fully set forth herein.

78.     Defendant's conduct, as set forth above, violates its fiduciary duties under

Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that

Defendant failed and continue to fail to discharge its duties with respect to the Plan solely in the

interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

of administering the Plan with (b) the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of a like character and with like aims, and (c)

by failing to act in accordance with the documents and instruments governing the Plan.  In

addition, as set forth above, Defendant violated its respective fiduciary duties under ERISA to

monitor other fiduciaries of the Plan in the performance of their duties.

79.     To the extent that any of the Defendant did not directly commit any of the

foregoing breaches of fiduciary duty, at the very minimum, Defendant is liable under 29 U.S.C. §

1105(a) because it was a co-fiduciary and knowingly participated in, or concealed, a breach by

another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their, or its specific responsibilities giving rise to his, her, their, or its fiduciary status, or knowingly failed to cure a breach of fiduciary duty by another fiduciary and failed to take reasonable efforts to remedy the breach.

80.    As a direct result of Defendant's breaches of duties, the Plan has suffered losses and damages.

81.    Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendant is liable to restore to the Plan the losses that have been suffered as a direct result of Defendant's breaches of fiduciary duty and is liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable expenses of litigation.

## COUNT II
### (Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)

82.    Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

83.    Defendant and the Board are responsible for appointing, overseeing, and removing members of the Administrative Committee.  Likewise, Advance and the Board are responsible for monitoring the performance of the Committee and its members.

84.    In light of its appointment and supervisory authority, Defendant had a fiduciary responsibility to monitor the performance of the Board, the Committee and their respective members.  In addition, Advance had a fiduciary responsibility to monitor the performance of the members of the Committee and the Board.

85.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan

-48-

assets, and must take prompt and effective action to protect the Plan and participants when they are not.

86.     To the extent that fiduciary monitoring responsibilities of Advance was delegated, Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

87.     Defendant breached its fiduciary monitoring duties by, among other things:

(a)  Failing to monitor and evaluate the performance of its appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and omissions with respect to the Plan;

(b)  Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

(c)  Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.

88.     As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had Defendant discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

89.     Defendant is liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the

Plan any profits made through use of Plan assets, and are subject to other equitable or remedial relief as appropriate.

90.    Defendant also knowingly participated in the breaches of the fiduciaries, knowing that such acts constituted breaches; enabled the other fiduciaries to commit breaches by failing to lawfully discharge its own fiduciary duties; and knew of the breaches by the other fiduciaries and failed to make any reasonable effort under the circumstances to remedy the breaches. Defendant, thus, is liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT III
**(In the Alternative, Liability for Knowing Breach of Trust)**

91.    Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

92.    In the alternative, to the extent that Defendant is not deemed a fiduciary or co-fiduciary under ERISA for any purpose, Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust.

93.    To the extent Defendant is not deemed to be a a fiduciary and/or is not deemed to be acting as a fiduciary for any and all applicable purposes, Defendant is liable for the conduct at issue here, since Defendant possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options, all of which was unjustifiable in light of the size and characteristics of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the Class and the Plan, demands judgment against Defendant for the following relief:

(a)     Declaratory and injunctive relief pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## <u>NOTICE PURSUANT TO ERISA § 502(h)</u>

To ensure compliance with the requirements of Section 502(h) of ERISA, 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

DATED: January 27, 2023                  Respectfully submitted,

<div style="margin-left: 45%;">

/s/Laurie Rubinow
Laurie Rubinow
Anna K. D'Agostino
Miller Shah LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: lrubinow@millershah.com
       akdagostino@millershah.com

</div>

-52-

James E. Miller
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com

James C. Shah
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

Kolin C. Tang
Miller Shah LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorneys for Plaintiff, the Plan
and the Proposed Class*